**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI, FLORIDA**

CASE NO.

**IRAIDA CABRERA MOLLINEDO**

*Plaintiffs,*

*v.*

**KRISTI NOEM**, Secretary, U.S. Department of Homeland Security (DHS); **JOSEPH B. EDLOW**, Director, U.S. Citizenship and Immigration Services (USCIS); **TODD M. LYONS**, Acting Director, U.S. Immigration and Customs Enforcement (ICE); **PETE R. FLORES**, Acting Commissioner, U.S. Customs and Border Protection (CBP); **MATTHEW S. DAVIES**, Executive Director of Admissibility and Passenger Programs, U.S. Customs and Border Protection (CBP); **ROBERT HAMMER**, Acting Executive Associate Director, Homeland Security Investigations (HSI)

*Defendants*.

**COMPLAINT FOR MANDAMUS, APA JUDICIAL REVIEW AND DECLARATORY RELIEF**

COMES NOW Plaintiff, IRAIDA CABRERA MOLLINEDO (hereinafter "Plaintiff"), by and through undersigned counsel, respectfully submits the instant Complaint for Mandamus, 28 U.S.C. §§ 1361, 1651, APA Judicial Review, 5 U.S.C. § 702 *et seq*., and Declaratory Relief, 28 U.S.C. § 2201, in combination with federal question jurisdiction, 28 U.S.C. § 1331. Plaintiff hereby challenges the U.S. Department of Homeland Security (DHS), including its agencies Immigration and Customs Enforcement

(ICE) and Customs and Border Protection (CBP), for their failure to issue a humanitarian parole pursuant to INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A). In support thereof, Plaintiff respectfully states the following:

**INTRODUCTION**

1. This case challenges DHS's unlawful failure to consider and process Plaintiff for parole under INA § 212(d)(5)(A), the only statutory mechanism for release available to individuals who, like Plaintiff, were apprehended at the border and placed in expedited removal proceedings under INA § 235(b).
2. Plaintiff, a native and citizen of Cuba, was issued an expedited removal order, which was later vacated, but DHS failed to follow the statutorily prescribed procedures for release.
3. Instead of using the exclusive authority of parole for individuals in Plaintiff's posture, DHS unlawfully released her under INA § 236 by issuing Form I-220A, Order of Release on Recognizance, a mechanism unavailable to individuals in expedited removal proceedings.
4. This statutory error has materially harmed Plaintiff's legal status and eligibility for adjustment of status under the Cuban Adjustment Act (CAA), 8 U.S.C. § 1255 note, which requires that a Cuban national be inspected and admitted or paroled into the United States.
5. Plaintiff seeks declaratory and mandamus relief compelling Defendants to correct the basis of her release and recognize that she must be considered for parole under INA § 212(d)(5)(A) in order to qualify for adjustment of status under the CAA.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to the federal question jurisdiction, 28 U.S.C. §1331, in combination with the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. *See Califano v. Sanders*, 430 U.S. 99 105-107 (1977); *see also Mejia Rodriguez v. United States Dep't of Homeland Sec*., 562 F.3d 1137, 1142-44 (11th Cir. 2009).

7. The APA provides that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by an agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C.§ 702(A).

8. For the purposes of 5 U.S.C. § 704, Plaintiffs lack any statutorily, regulatory, or administrative remedy. Therefore, the instant suit is properly filed since Plaintiffs do not have any administrative remedy available to redress her injury. 5 U.S.C. § 704 ("[a]gency action made reviewable by status and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").

9. This Court can set aside agency actions found to be "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law". 5 U.S.C. § 706(1), (2)(A). The Defendants' actions at issue herein were not with accordance of the laws set in the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1104-1401.

10. Pursuant to 28 U.S.C. § 2201, this Court may, in the case of actual controversy, "declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201.

11. Pursuant to 28 U.S.C. § 1361, Action to Compel an Officer of The United States to Perform His Duty, "[t]he district courts shall have original jurisdiction of any action

in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.” 28 U.S.C. § 1361.

12. Venue properly lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(e)(1) in that this is an action against U.S. officers in their official capacity brought in the district where a substantial part of the event and/or omissions giving rise to Plaintiffs’ claims have occurred, and where Plaintiff reside as no real property is involved in this action. 28 U.S.C. §§ 1391(e)(1)(B).

**PARTIES**

13. Plaintiff, Iraida Cabrera Mollinedo, was born on February 1, 1965, and is a native and citizen of Cuba currently living in the United States. *See* Exhibit A.

14. Defendant, Kristi Noem, Secretary of the Department of Homeland Security (DHS), is charged with administering and enforcing the laws governing immigration and naturalization. Defendant is sued in her official capacity.

15. Defendant, Joseph B. Edlow, is the Director of United States Citizenship and Immigration Services (USCIS) of the Department of Homeland Security (DHS). She is sued in her official capacity based upon her responsibility to administer and enforce the laws relating to immigration and naturalization in the United States.

16. Defendant, Todd M. Lyons, is the Acting Director of United States Immigration and Customs Enforcement (ICE), a component agency of DHS responsible for enforcing immigration laws and facilitating removal proceedings. He is sued in his official capacity.

17. Defendant, Pete R. Flores, is the Acting Commissioner of United States Customs and Border Protection (CBP), a component agency of DHS responsible for the inspection and processing of individuals at U.S. ports of entry. He is sued in his official capacity.

18. Defendant, Matthew S. Davies, is the Executive Director of Admissibility and Passenger Programs at CBP, overseeing entry procedures and programs for noncitizens. He is sued in his official capacity.

19. Defendant, Robert Hammer, is the Acting Executive Associate Director of Homeland Security Investigations (HSI), a division within ICE responsible for investigating violations of immigration and customs laws. He is sued in his official capacity.

## BACKGROUND

20. The Cuban Adjustment Act of 1966 ("CAA"), Pub. L. No. 89-732, 80 Stat. 1161, was enacted to address the humanitarian and political concerns arising from the migration of Cuban nationals fleeing the communist regime in Cuba. The Act provides a discretionary pathway to lawful permanent resident ("LPR") status for Cuban natives or citizens who meet certain eligibility criteria. The statute, codified at 8 U.S.C. § 1255 note, states in relevant part:

> "...the status of any alien who is a native or citizen of Cuba who has been inspected and admitted or paroled into the United States after January 1, 1959 and has been physically present in the United States for at least one year, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence..."

21. The statute is unique in U.S. immigration law for its humanitarian focus and broad remedial scope. In particular, the Act allows adjustment even for individuals who

may be otherwise inadmissible or subject to removal, provided that they (1) are Cuban nationals, (2) have been "inspected and admitted or paroled" into the United States, and (3) have been physically present in the United States for at least one year.

22. The pivotal statutory phrase "inspected and admitted or paroled" has been the subject of significant judicial interpretation. For most adjustment applications under INA § 245(a), applicants must show that they entered the U.S. after inspection and admission or parole. This requirement is mirrored in the CAA.

23. Notably, "parole" in this context does not necessarily mean express or written parole granted at the port of entry. Courts have recognized that parole under INA § 212(d)(5)(A) may occur implicitly, particularly where no other lawful authority exists for a noncitizen's release from detention.

24. The Board of Immigration Appeals (BIA) has held that parole under § 212(d)(5)(A) includes certain releases following immigration detention, particularly where the only legal authority permitting release is parole. *See Matter of Castillo-Padilla*, 25 I&N Dec. 257 (BIA 2010); *Matter of Oseiwusu*, 22 I&N Dec. 19 (BIA 1998).

25. The Immigration and Nationality Act (INA) creates separate procedures for processing and detaining noncitizens arriving at the United States border. Noncitizens who arrive without valid entry documents and are not admitted into the United States are presumptively subject to expedited removal proceedings under INA § 235(b)(1).

26. These expedited procedures are designed to enable prompt removal of certain arriving noncitizens without full immigration court hearings. However, when an

individual subject to expedited removal expresses a fear of persecution or torture, the statute mandates a referral for a credible fear interview and requires that the individual remain in detention while this protection claim is adjudicated. See INA § 235(b)(1)(B)(ii).

27. If an individual is found to have a credible fear, they are placed into full removal proceedings under INA § 240 for further adjudication of asylum and related relief. Notably, INA § 235(b)(1)(B)(ii) continues to govern detention, stating that such individuals "shall be detained" for the duration of the asylum process unless they are explicitly granted parole under INA § 212(d)(5)(A).

28. Parole under INA § 212(d)(5)(A) is a limited and statutorily authorized mechanism that allows the government to release an otherwise inadmissible alien into the United States temporarily, on a case-by-case basis, for "urgent humanitarian reasons" or "significant public benefit." This is the only lawful release mechanism applicable to individuals detained under § 235(b).

29. The Attorney General has confirmed that noncitizens in expedited removal who pass a credible fear screening are not eligible for release under INA § 236, which governs release on bond or recognizance for aliens in full removal proceedings.

30. In *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019), the Attorney General held that individuals initially placed in expedited removal proceedings and later referred for asylum proceedings under § 240 must remain detained under § 235(b) unless granted parole. Release under § 236(a) is not permitted.

31. The Board of Immigration Appeals (BIA) reiterated this principle in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), holding that the use of INA § 236(a) release mechanisms, such as the issuance of Form I-220A, Order of Release on Recognizance, is legally impermissible for individuals subject to § 235(b) expedited removal procedures. The BIA explicitly rejected the notion that DHS could circumvent mandatory detention by issuing an I-220A or invoking § 236 for such individuals.

32. The BIA further emphasized that when DHS releases individuals subject to § 235(b) detention, such release must be treated and recorded as parole under INA § 212(d)(5)(A), and appropriate documentation (such as a Form I-94 indicating parole) must be issued to reflect that status.

33. This position is reinforced by *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005), which confirms that individuals processed under § 235(b) may be released only by parole, and not by bond or recognizance. The BIA, in *Matter of X-K-*, recognized that DHS retains limited discretion to parole such individuals, but only if the case satisfies the narrow statutory criteria.

34. The legal distinction between parole and other forms of release is not a mere formality. Immigration benefits available to certain classes of individuals, especially Cuban nationals, depend entirely on whether they were "inspected and admitted or paroled" into the United States.

35. Under the Cuban Adjustment Act (CAA), enacted in 1966 and codified at 8 U.S.C. § 1255 note, the U.S. Congress established a unique pathway to permanent residence for Cuban nationals. The CAA allows any Cuban citizen who has been "inspected and

admitted or paroled" into the United States, and who has been physically present in the country for at least one year, to apply for adjustment of status to lawful permanent residence.

36. The statutory terms "admitted" and "paroled" have fixed legal meanings. A noncitizen who is released under INA § 236, such as by issuance of Form I-220A, is neither admitted nor paroled within the meaning of the CAA. Therefore, Cuban nationals who are improperly released under § 236 are legally barred from pursuing the relief Congress intended to provide.

37. This was further clarified in *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. 771 (BIA 2012), where the BIA highlighted the significance of parole as a legally recognized immigration status that carries distinct statutory consequences. The decision affirms that parole, when properly granted, preserves eligibility for benefits that would otherwise be foreclosed.

38. Accordingly, for a Cuban national like Plaintiff, the failure by DHS to parole her under § 212(d)(5)(A), and the unlawful issuance of release under § 236, directly frustrates the purpose of the Cuban Adjustment Act and inflicts substantial legal prejudice by depriving her of access to permanent immigration relief.

## **FACTS AND PROCEDURAL HISTORY**

39. In 2021, Plaintiff fled Cuba due to severe persecution stemming from her political opinions, which are in direct opposition to the current government in power. As a result of her political activities and dissent, she faced significant retaliation, including

threats to her safety and well-being. Her departure from Cuba was not a matter of choice but of survival.

40. Plaintiff entered the United States without admission or inspection at or near San Luis, Arizona. Upon apprehension by U.S. Customs and Border Protection (CBP), she expressed a fear of return to Cuba, triggering statutory protections under U.S. asylum and international human rights law.

41. Following her apprehension, Plaintiff was placed into expedited removal proceedings pursuant to INA § 235(b)(1). She was initially ordered removed expeditiously, consistent with the streamlined removal procedures applicable to certain arriving aliens who do not possess valid entry documents.

42. However, after the expedited removal order was issued, it was subsequently vacated. Despite the vacatur of the order, Plaintiff remained procedurally within the scope of expedited removal processing, which continued to govern her detention and release options.

43. Consistent with established practice and the requirements of INA § 235(b)(1)(B), Plaintiff should have remained in detention pending a credible fear determination, and if found to have such fear, pending the full adjudication of her asylum application, unless she was affirmatively granted parole under INA § 212(d)(5)(A).

44. Instead of being granted parole as required by law, Plaintiff was released from custody on the same day, June 24, 2022, through a Form I-220A, Order of Release on Recognizance, which DHS issued under INA § 236. This form of release is categorically inapplicable to individuals subject to expedited removal. *See* Exhibit B.

45. On that same date, Plaintiff was also issued a Form I-862, Notice to Appear (NTA), charging her with inadmissibility under INA § 212(a)(6)(A)(i) for entry without inspection. The NTA stated that Plaintiff would appear for removal proceedings before an immigration judge. The NTA further indicated that Plaintiff was being processed as NTA/OR (Notice to Appear/Own Recognizance) for humanitarian reasons, without citing the applicable statutory release authority. *See* Exhibit C; Exhibit D.

46. DHS's decision to release Plaintiff under § 236 rather than parole under § 212(d)(5)(A) is in direct conflict with binding legal precedent, including the Attorney General's decision in *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019), which held that individuals in expedited removal proceedings who have been found to have a credible fear are ineligible for release under § 236 and must instead remain detained unless paroled under § 212(d)(5)(A).

47. An "applicant for admission" is defined, in relevant part, as an alien "who arrives in the United States []whether or not at a designated port of arrival." INA § 235(a)(1), 8 U.S.C. § 1225(a)(1). Moreover, applicants for admission "who are not actually requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws." *Matter of Lemus-Losa*, 25 I&N Dec. 734, 743 (BIA 2012). The Supreme Court has clarified that nonimmigrants detained shortly after an unlawful entry are in the same position as those seeking admission at a port of entry. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

48. The Department of Homeland Security (DHS) may place aliens arriving in the United States in either expedited removal proceedings under INA § 235(b)(1), 8 U.S.C. § 1225(b)(1), or full removal proceedings under INA §240, 8 U.S.C. § 1229(a).

49. Regardless of the form of removal proceedings in which the noncitizen is placed, the INA mandates detention until removal proceedings have concluded. *See* INA § 235(b)(l)(B)(ii), 8 U.S.C. § 1225(b)(1)(B)(ii); INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A).

50. On the other hand, section 236(a) of the INA, 8 U.S.C. § 1226(a), authorizes DHS to arrest and detain aliens on a warrant pending a decision on their removal from the United States. *Matter of Q. LI,* 29 I&N Dec. 66, 69 (BIA 2025).

51. Unlike aliens detained under section 236(a), aliens arriving in the United States who are detained under section 235(b)(1) or (b)(2) are ineligible for release on bond because both provisions "mandate detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018).

52. Noncitizens detained under section 236(a) may be eligible for discretionary release on bond or conditional parole pursuant to section 236(a)(2) of the INA, 8 U.S.C. § 1226(a)(2)

53. On the other hand, the only exception permitting the release of noncitizens detained under section 235(b) of the INA, 8 U.S.C. § 1225(b), is the parole authority provided by section 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A). See *Jennings*, 583 U.S. at 300.

54. In the recently published case decided by the Board of Immigration Appeals (BIA), the BIA has determined the following:

> Once an alien is detained under section 235(b), DHS cannot convert the statutory authority governing her detention from section 235(b) to section 236(a) through the post-hoc issuance of a warrant. The Supreme Court has recognized that it would make "little sense" to read section 235(b) and section 236(a) as authorizing DHS to "detain an alien without a warrant at the border" but then requiring DHS "to issue an arrest warrant in order to continue detaining the alien" once removal proceedings have commenced. *Jennings*, 583 U.S. at 302. The regulation implementing DHS' authority to conduct arrests under section 236(a) authorizes a prospective arrest and contemplates that the subject of the warrant has not yet been arrested and taken into custody at the time the warrant is issued. *See* 8 C.F.R. § 236.1(b)(1) (2025). Indeed, the Supreme Court has recognized that a warrant issued under section 236(a) is one "leading to the alien's arrest." *Jennings*, 583 U.S. at 302

*Matter of Q. Li*, 29 I&N at 69, n.4.

55. Therefore, the BIA in *Matter of Q. Li* recognizes that noncitizens, like Plaintiff, arriving in the United States, whether at a POE or not, were subject to detention under INA § 235, 8 U.S.C. § 1225 from the moment they were arrested before the issuance of a warrant. *Id*. The BIA also recognizes that such noncitizens detained under INA § 235, 8 U.S.C. § 1225 are only eligible for release under the humanitarian parole authority provided by INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A).

56. Consequently, Plaintiff should have been issued a humanitarian parole upon release from custody. The issuance of the humanitarian parole would allow Plaintiffs to obtain legal permanent resident status under the Cuban Adjustment Act (CAA) of 1966 (Pub. L. No. 89-732, 80 Stat. 1161, codified at 8 U.S.C. § 1255 (Cuban nationals who have been inspected and admitted or **paroled** into the United States may apply for adjustment of status to that of a lawful permanent resident after one year of physical presence in the United States).

57. Defendants' own regulation, in its pertinent parts at 8 C.F.R. § 212.5(b), states that, "[t]he parole of aliens within the following groups who have been or are detained in accordance with [8 C.F.R.] § 235.3(b) or (c) of this chapter would generally be justified **only** on a case-by-case basis for "urgent humanitarian reasons" or "significant public benefit[.]"(emphasis added).
    a. 8 C.F.R. § 235.3(c)(1) refers to arriving aliens placed in removal proceedings pursuant to Section 240 of the INA, and states that, "[p]arole of such alien[s] shall only be considered in accordance with [8 C.F.R.] § 212.5(b)[.]"
58. Thus, 8 C.F.R. § 212.5(b) establishes that to release an arriving alien, Defendants may only do so by issuing a humanitarian parole under section 212(d)(5)(A) of the INA, 8 U.S.C. § 182(d)(5)(A).
59. Despite these legal requirements, DHS has not corrected Plaintiff's legal status or taken any action to formally consider her for parole. As a result, Plaintiff remains classified as an individual released under § 236, not as a parolee, even though the law precludes that designation in her case.
60. This improper classification of Plaintiff's release has immediate and severe consequences. As a Cuban national, Plaintiff is statutorily eligible to adjust her status under the Cuban Adjustment Act (CAA) if she is able to show that she was "inspected and admitted or paroled" into the United States and has been physically present for at least one year.

61. However, release under INA § 236, via Form I-220A, does not satisfy the CAA's parole requirement, thereby rendering Plaintiff categorically ineligible for permanent lawful status under that provision, solely due to DHS's legal error.

62. DHS's continued failure to correct the Plaintiff's release classification or to initiate a parole process under the proper statutory framework constitutes a violation of both its non-discretionary statutory duties and the Plaintiff's due process and statutory rights.

## CLAIMS FOR RELIEF

## COUNT I

### Mandamus Action (28 U.S.C. § 1361)

63. Plaintiffs re-allege and restate allegations in paragraphs one (1) through thirty-six (36) above as though they were stated herein.

64. This claim is brought under the Mandamus Act, 28 U.S.C. § 1361, which authorizes a district court to compel a federal officer or agency to perform a duty owed to the plaintiff that is clear, ministerial, and non-discretionary.

65. Mandamus relief is only appropriate when: (I) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available. *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003).

66. Plaintiff was placed into expedited removal proceedings under INA § 235(b)(1) upon her entry into the United States. She expressed a fear of return and was thus statutorily entitled to be referred for a credible fear interview and detained under INA § 235(b)(1)(B) pending the outcome of her asylum-related proceedings.

67. Under the clear terms of INA § 235(b)(1)(B)(ii) and consistent with the binding precedents of *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019), and *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), Plaintiff is not eligible for release under INA § 236. DHS has no lawful authority to release Plaintiff under this provision.

68. The only form of release available to Plaintiff under the INA is parole, governed by INA § 212(d)(5)(A). DHS has a clear legal duty to consider and, if warranted, authorize Plaintiff's release through that statutory mechanism.

69. Despite this duty, DHS improperly released Plaintiff via Form I-220A under § 236. That release was ultra vires, done under statutory authority that did not and could not apply to her circumstances.

70. Because Plaintiff is a Cuban national, this erroneous classification of her release deprives her of eligibility for adjustment of status under the Cuban Adjustment Act (CAA), a form of immigration relief that specifically requires an individual to have been "inspected and admitted or paroled" into the United States.

71. DHS's failure to correct the classification of Plaintiff's release and failure to process her under the parole authority of § 212(d)(5)(A) constitutes a violation of a non-discretionary, ministerial duty owed to Plaintiff under the law.

72. Plaintiff has a clear and undisputed right to have DHS apply the correct statutory framework, namely, § 212(d)(5)(A), to her case. The agency has a mandatory duty to comply with the statutory release procedures governing expedited removal cases.

73. Plaintiff has no adequate remedy in law. DHS has failed to take corrective action administratively despite its legal obligation and repeated litigation affirming the

correct procedures. Without mandamus relief from this Court, Plaintiff will remain ineligible for adjustment under the CAA due solely to DHS's legal error.

74. The Court therefore has jurisdiction under 28 U.S.C. § 1361 to compel DHS to perform its legal obligation and to order it to take immediate corrective action by: (1) recognizing that Plaintiff was unlawfully released under INA § 236, and (2) considering her for parole under INA § 212(d)(5)(A), consistent with the statutory mandate and the precedents in Matter of M-S-, Matter of Q. Li, and Matter of X-K-.

**COUNT II**

**Administrative Procedure Act (APA) Violation (5 U.S.C. § 706(2)(A))**

75. Plaintiffs re-allege and restate allegations in paragraphs one (1) through thirty-six (36) above as though they were stated herein.

76. The Administrative Procedure Act (APA) requires that courts hold unlawful and set aside agency actions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

77. DHS's decision to release Plaintiff pursuant to INA § 236, via Form I-220A, Order of Release on Recognizance, is not in accordance with law because it contradicts the express provisions of the Immigration and Nationality Act and binding precedents interpreting it.

78. Plaintiff was initially placed into expedited removal proceedings under INA § 235(b)(1) after entering the United States without inspection and expressing a fear of persecution.

79. Under INA § 235(b)(1)(B)(ii), such individuals must be detained while their claims are adjudicated unless released under INA § 212(d)(5)(A), which authorizes parole for "urgent humanitarian reasons" or "significant public benefit."

80. The statutory framework does not permit release under INA § 236 for individuals like Plaintiff who were apprehended at the border and placed into expedited removal. This has been made clear by binding decisions including:

   a. *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019): establishing that § 236 does not apply to individuals in expedited removal.

   b. *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025): confirming that DHS lacks authority to use § 236 to release individuals initially placed in § 235(b) proceedings.

   c. *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005): affirming that release in this context must occur through parole, and parole only.

81. DHS's decision to bypass the parole process and instead issue a Form I-220A under § 236 is contrary to law, as it violates the detention and release scheme Congress specifically enacted for individuals processed under § 235(b).

82. This unlawful action has had significant legal consequences for Plaintiff. Because she is a Cuban national, her eligibility for adjustment of status under the Cuban Adjustment Act (CAA) depends entirely on whether she was "inspected and admitted or paroled" into the United States.

83. DHS's improper reliance on § 236 and failure to parole Plaintiff under § 212(d)(5)(A) has deprived her of the opportunity to pursue lawful permanent residence under the

CAA, a direct and irreparable harm caused by agency action that is not in accordance with law.

84. As a result, DHS has failed to comply with its legal obligations under the INA and has taken action that is arbitrary, unlawful, and outside the bounds of permissible statutory interpretation.

85. Plaintiff is entitled to relief under 5 U.S.C. § 706(2)(A), including a declaration that DHS's release of Plaintiff under § 236 was unlawful and an injunction compelling the agency to correct her release classification and consider her for parole in accordance with § 212(d)(5)(A).

**COUNT III**

**Administrative Procedure Act (APA) Violation (5 U.S.C. § 706(1))**

86. Plaintiffs re-allege and restate allegations in paragraphs one (1) through thirty-six (36) above as though they were stated herein.

87. Under the Administrative Procedure Act (APA), a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

88. DHS has a nondiscretionary legal obligation to comply with the detention and release framework established in INA § 235(b) for individuals who enter the United States without inspection and are placed into expedited removal proceedings.

89. Upon expression of a fear of persecution or torture, Plaintiff was entitled to be referred for a credible fear interview, and, if found to have a credible fear, she was to remain detained pursuant to § 235(b)(1)(B)(ii) unless affirmatively granted parole under INA § 212(d)(5)(A).

90. The INA does not authorize DHS to release such individuals under INA § 236, and agency precedent, including *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019), and *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), has unambiguously confirmed that individuals like Plaintiff may only be released via parole.

91. Notwithstanding this clear mandate, DHS failed to either (a) grant Plaintiff parole under § 212(d)(5)(A) or (b) initiate a parole determination process. Instead, it released Plaintiff under Form I-220A, an unauthorized action that has resulted in an ongoing violation of law.

92. DHS has unlawfully withheld the required agency action, namely, the initiation of a parole process for Plaintiff, and has unreasonably delayed correcting the legal status of her release. DHS has never issued a Form I-94 indicating parole, nor has it conducted any individualized review as required under § 212(d)(5)(A).

93. As a result of this omission, Plaintiff remains classified as an individual released under INA § 236, a classification that is legally erroneous and materially prejudicial.

94. This failure continues to harm Plaintiff by depriving her of eligibility for immigration benefits under the Cuban Adjustment Act (CAA), which requires that an applicant be "inspected and admitted or paroled" into the United States. Because Plaintiff was never properly paroled, she cannot satisfy this threshold requirement despite her physical presence and Cuban nationality.

95. The delay and withholding are especially egregious in light of the fact that DHS had an affirmative statutory duty to act under § 212(d)(5)(A), and its failure to do so has

blocked Plaintiff's ability to normalize her immigration status under the laws enacted by Congress.

96. Plaintiff has made multiple efforts to obtain lawful recognition of her eligibility for parole but has received no meaningful response from the agency. The ongoing inaction by DHS constitutes an unreasonable delay in carrying out its statutory duty and constitutes agency inaction reviewable by this Court under 5 U.S.C. § 706(1).

97. Accordingly, Plaintiff respectfully requests that the Court: (1) declare that DHS has unlawfully withheld or unreasonably delayed agency action owed to Plaintiff; (2) compel DHS to perform its nondiscretionary duty by initiating a parole determination under INA § 212(d)(5)(A); and (3) enjoin any further misclassification of Plaintiff's release status under INA § 236.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, respectfully prays that that this Honorable Court will:

98. Accept jurisdiction over the instant matter;

99. Issue a Writ of Mandamus compelling Defendants to perform their nondiscretionary duty to consider Plaintiff for parole under INA § 212(d)(5)(A), as the exclusive lawful mechanism for release applicable to individuals placed in expedited removal proceedings under INA § 235(b);

100. Declare, pursuant to 28 U.S.C. § 2201 and 5 U.S.C. § 706(2), that Defendants' action in releasing Plaintiff under INA § 236 via Form I-220A was unlawful and not in accordance with law, in violation of the Immigration and Nationality Act and governing precedent;

101. Declare that Defendants have unlawfully withheld and unreasonably delayed agency action owed to Plaintiff by failing to initiate or complete a lawful parole process under INA § 212(d)(5)(A);

102. Order Defendants to promptly correct Plaintiff's immigration records to reflect a lawful parole release under INA § 212(d)(5)(A) and to issue any documentation necessary to evidence such parole, including but not limited to Form I-94;

103. Enjoin Defendants from continuing to classify Plaintiff as having been released under INA § 236, or from otherwise taking adverse action based on that misclassification;

104. Award Plaintiff her reasonable attorneys' fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, or other applicable law; and

105. Grant such other and further relief as the Court deems just, proper, and equitable.

Respectfully submitted,

s/Eduardo R. Soto August 6, 2025
Eduardo R. Soto, Esq. Date
Florida Bar No. 0858609
Eduardo Soto & Associates, P.A.
999 Ponce de Leon Blvd., Suite 1040
Coral Gables, Florida 33134
Office: (305) 446-8686
Fax: (305) 529-0445

## EXHIBIT LIST

**Exhibit A** – Copy of Plaintiff's Passport and Birth Certificate

**Exhibit B** – Copy of Plaintiff's Form I-220A, Order of Release on Recognizance

**Exhibit C** – Copy of Plaintiff's Form I-862, Notice to Appear

**Exhibit D** – Copy of Plaintiff's Form I-831, Record of Deportable/Inadmissible Alien

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 6, 2025, I electronically filed the foregoing document with the Clerk of Court using PACER. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notices of Electronic Filing generated by PACER or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

s/ Eduardo R. Soto August 6, 2025
Date

Eduardo R. Soto, Esq.
Florida Bar No. 0858609
Eduardo Soto & Associates, P.A.
999 Ponce de Leon Blvd., Suite 1040
Coral Gables, Florida 33134
Office: (305) 446-8686
Fax: (305) 529-0445