**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 25-23515-JB**

IRAIDA CABRERA MOLLINEDO,

*Plaintiff,*

v.

KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS); JOSEPH B. EDLOW, Director, U.S. Citizenship and Immigration Services (USCIS); TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement (ICE); PETE R. FLORES, Acting Commissioner, U.S. Customs and Border Protection (CBP); MATTHEW S. DAVIES, Executive Director of Admissibility and Passenger Programs, U.S. Customs and Border Protection (CBP); ROBERT HAMMER, Acting Executive Associate Director, Homeland Security Investigations (HSI),

*Defendants.*
_____________________________________________/

**DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Defendants, by and through the undersigned counsel, respectfully move to dismiss Plaintiff Iraida Cabrera Mollinedo's Complaint for Mandamus, APA Judicial Review, and Declaratory Relief [D.E. 1] and all claims pled therein. In support, Respondents state as follows:

## I. INTRODUCTION

Plaintiff Iraida Cabrera Mollinedo ("Plaintiff") was detained by U.S. Immigration and Customs Enforcement ("ICE") in accordance with the Immigration and Nationality Act ("INA"), its implementing regulations, and the Constitution. In her Complaint for Mandamus, APA

Judicial Review, and Declaratory Relief [D.E. 1, "Complaint"], Plaintiff seeks relief declaring that she should be considered for parole under Immigration and Nationality Act ("INA") § 212(d)(5)(A) (8 U.S.C. § 1182(d)(5)(A)) rather than release under INA § 236 (8 U.S.C. § 1226). *See* Complaint at ¶¶ 99, 100.

In her Complaint, Plaintiff asserts three Counts—one seeking Mandamus relief and two under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. All Counts seek the same relief, in relevant part, to require the Defendants to issue a humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). Thus, Plaintiff asks this Court to review the action of not issuing a discretionary humanitarian parole as a matter of right. However, 8 U.S.C. § 1252(a)(2)(B)(ii) precludes jurisdiction over all of Plaintiff's claims.

In Count I, Plaintiff seeks Mandamus pursuant to 28 U.S.C. § 1361. This count should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because Plaintiff cannot prove neither the first factor, a clear right to the relief sought, nor the second factor, a nondiscretionary duty to act. Plaintiff has not shown, either through caselaw or by statute, that Defendants have a duty to grant a discretionary humanitarian parole as a matter of right. To the extent the Court finds it has jurisdiction, Plaintiff failed to state a the reasons explained above.

In Count II, Plaintiff alleges that Defendants engaged in agency action contrary to the law in violation of 5 U.S.C. § 706(2)(A). This count should be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) because Plaintiff is not entitled to humanitarian parole, which is discretionary, as a matter of right because she was released with Form I-220A, Order of Release on Recognizance ("Release on Recognizance" or "conditional parole") despite being subject to mandatory detention under 8 U.S.C. § 1225(b).

Lastly, in Count III, Plaintiff alleges Defendants have unreasonably delayed the issuance of her humanitarian parole. Count III should be dismissed under Fed. R. Civ. P. 12(b)(6) because Defendants did not unreasonably delay the issuance of humanitarian parole where Plaintiff has not established she is entitled to a grant of humanitarian parole as a matter of right. Section 706(1) can only be used to compel non-discretionary acts, but the grant of humanitarian parole is a purely discretionary function of the Secretary of the Department of Homeland Security. 8 U.S.C. § 1182(d)(5)(A).

## II. FACTUAL BACKGROUND

Plaintiff, a Cuban national, seeks "seeks declaratory and mandamus relief compelling Defendants to correct the basis of her release and recognize that she must be considered for parole under INA § 212(d)(5)(A) in order to qualify for adjustment of status under the [Cuban Adjustment Act]." *See* D.E. 1, Complaint, at ¶¶ 4, 5. Plaintiff entered the United States without admission or inspection at or near San Luis, Arizona in 2021. *Id.* at ¶¶ 39, 40. Shortly, thereafter, Customs and Border Protection ("CBP") apprehended the Plaintiff. *Id.* at ¶ 40. Following her apprehension, CBP placed Plaintiff in expedited removal proceedings pursuant to INA § 235(b)(1). *Id.* at ¶ 41. After her expedited removal order was vacated, Plaintiff was released from custody on June 24, 2022, through a Form I-220A, Order of Release on Recognizance and not pursuant to a humanitarian parole. *Id.* at ¶¶ 42, 44.

## III. STATUTORY BACKGROUND

### A. Applicants for admission under 8 U.S.C. § 1225(a)(1)

According to 8 U.S.C. § 1225(a)(1), an alien "present in the United States who has not been admitted. . . shall be deemed for purposes of this chapter an applicant for admission." The same statutory provision also treats as an "applicant for admission" any alien "who arrives in the

United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." *Id.*

**B. Applicants for admission are subject to mandatory detention under § 1225(b)**

> [Section] 1225(b) applies primarily to aliens seeking entry into the United States ("applicants for admission" in the language of the statute). Section 1225(b) divides these applicants into two categories. First, certain aliens claiming a credible fear of persecution under §1225(b)(1) "shall be detained for further consideration of the application for asylum." §1225(b)(1)(B)(ii). Second, aliens falling within the scope of §1225(b)(2) "shall be detained for a [removal] proceeding." §1225(b)(2)(A).
>
> Read most naturally, §§1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum,"and §1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under §1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention.

*Jennings v. Rodriguez,* 583 U.S. 281, 297 (2018) (quotations in original); *see also Florida v. United States*, 660 F. Supp. 3d 1239, 1277 (N.D. Fla. 2023) (Stating that "§1225(b) requires detention of applicants for admission at the Southwest Border and that DHS may not release these aliens under §1226(a).").

**C. The only lawful avenue for release for those subject to mandatory detention is humanitarian parole under § 1182(d)(5)(A)**

> Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 CFR §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U. S. C. §1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

*Jennings*, 583 U.S. at 288 (quotations in original).

**D. Humanitarian Parole is discretionary and granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit**

> The Secretary of Homeland Security may…in his discretion parole into the United

> States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

Section 1182(d)(5)(A).

"An alien who is paroled under section 1182(d)(5) of this title . . . shall not be considered to have been admitted." § 1101(a)(13)(B). Then, "after [the] purpose of [the] parole has been served, [the] alien's status reverts to that which he had at time he was inspected and paroled into United States[.]" *Cruz-Miguel v. Holder*, 650 F.3d 189, 198 (2d Cir. 2011) (citing § 1182(d)(5)(A)).

**E. Conditional parole under 8 U.S.C. § 1226(a) is a form of release from immigration detention**

Conditional parole under § 1226(a) is distinct from humanitarian parole under § 1182(d)(5) and refers to releasing an alien on her own recognizance. *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (BIA 2023) ("The respondents were…released on their own recognizance under section 236 of the INA, 8 U.S.C. § 1226…"). Further, the Form I-220A, Order of Release on Recognizance is the form used to release individuals, such as Plaintiff, from immigration custody pursuant to § 1226(a) (INA § 236). *See* D.E. 1, Complaint, at 44.

Specifically, § 1226(a) states:

> §1226. Apprehension and detention of aliens
>
> i. Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General-
>
> 1. may continue to detain the arrested alien; and

2. may release the alien on-
    a. bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
    b. conditional parole; but
3. may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

Section 1226(a).

**F. Eligibility for adjustment under the Cuban Adjustment Act of 1966**

The Cuban Adjustment Act of 1966 allows Cuban nationals present in the United States to adjust their status to that of lawful permanent residents. Cuban Adjustment Act of 1966, Pub. L. No. 89-732, 80 Stat. 1161 (codified as amended at 8 U.S.C. § 1255 note); *see also* 8 C.F.R. § 245.2(a)(2)(ii). It applies to a person who is "a native or citizen of Cuba and who has been *inspected and admitted or paroled* into the United States subsequent to January 1, 1959, and has been physically present in the United States for at least one year." Pub. L. No. 89-732, § 1.

**G. The Impact of the 2017 termination of "wet-foot/dry foot" on the Cuban Adjustment Act of 1966**

On January 12, 2017, Former Secretary of Homeland Security Johnson announced, "several changes to Department of Homeland Security (DHS) policies and regulations affecting Cuban nationals." U.S. Dep't of Homeland Security., Fact Sheet: Changes to Parole and Expedited Removal Policies Affecting Cuban Nationals, https://www.dhs.gov/publication/changes-parole-and-expedited-removal-policies-affecting-cuban-nationals (last accessed Nov. 3, 2025). "Specifically, DHS has eliminated a special parole policy for arriving Cuban nationals commonly known as the "wet-foot/dry-foot" policy…". *Id*. "It is now Department policy to consider any requests for such parole in the same manner as parole requests filed by nationals of

other countries." *Id*. Additionally, "DHS… also eliminat[ed] an exemption that previously prevented the use of expedited removal proceedings for Cuban nationals apprehended at ports of entry or near the border." *Id*.

Specifically, as to humanitarian parole:

> The policy commonly known as "wet-foot/dry-foot" generally refers to an understanding under which Cuban migrants traveling to the United States who are intercepted at sea ("wet foot") are returned to Cuba or resettled in a third country, while those who make it to U.S. soil ("dry foot") are able to request parole and, if granted, lawful permanent resident status under the Cuban Adjustment Act.
>
> The former INS established a policy strongly encouraging the parole of Cuban nationals who arrived in the United States so that they could apply for relief under the Cuban Adjustment Act. Secretary Johnson is rescinding this outdated INS policy.

*Id*.

## IV. ARGUMENT

### A. § 1252(a)(2)(B)(ii) precludes subject matter jurisdiction over all of Plaintiff's claims.

A district court must dismiss an action if the court lacks jurisdiction over the subject matter of the suit. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3). Here, Plaintiff challenges Defendants' failure to award Plaintiff a discretionary grant of humanitarian parole, claiming that that should have happened, and asks the Court to "compelling Defendants to perform their nondiscretionary duty to consider Plaintiff for parole under INA § 212(d)(5)(A), as the exclusive lawful mechanism for release applicable to individuals placed in expedited removal proceedings under INA § 235(b)." *See* D.E. 1, Complaint, at ¶¶ 56, 99.

Section 1252(a)(2)(B)(ii) explicitly precludes jurisdiction over any such claims and states "regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—….any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to

be in the discretion of the Attorney General or the Secretary of Homeland Security...". 8 U.S.C. § 1252(a)(2)(B)(ii).

As explained above, § 1182(d)(5)(A) specifies that the authority to grant humanitarian parole is in the discretion of the Secretary of Homeland Security. Therefore, § 1252(a)(2)(B)(ii) strips the court of jurisdiction over any claim seeking to challenge any decision or action taken regarding the issuance, or lack thereof, of humanitarian parole under § 1182(d)(5)(A). *See Martinez Mayorga v. Meade*, Case No. 24-cv-22131-BLOOM/Elfenbein, 2024 WL 4298815, 2024 U.S. Dist. LEXIS 174421, at *19, *20 (S.D. Fla. Sept. 26, 2024) (concluding that the court lacked jurisdiction under § 1252(a)(2)(B)(ii) to review the "decision to have not granted release through [humanitarian] parole due to the health of Petitioner's mother" as it is a "discretionary" determination.…"); *Vazquez Romero v. Garland*, 999 F.3d 656, 665 (9th Cir. 2021) ("We have previously concluded that the jurisdiction-stripping provision of § 1252(a)(2)(B)(ii) applies to discretionary parole decisions under § 1182(d)(5).") (citing *Hassan v. Chertoff*, 593 F.3d 785, 790 (9th Cir. 2010)); *Cf. Dixit ex rel. Ad v. Fairnot*, 2025 U.S. App. LEXIS 15393, at *12, 2025 WL 1733887 (11th. Cir. 2025) (citing *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (quotation omitted) ("the failure to receive relief that is purely discretionary in nature, such as humanitarian parole, does not amount to a deprivation of a liberty interest.").

Notably, in *Alonso-Escobar*, the U.S. Court of Appeals for the Eleventh Circuit found the district court properly dismissed plaintiff's complaint for lack of subject matter jurisdiction where plaintiff "sought a court order requiring the USCIS to grant him parole into the United States so he could apply to adjust his immigration status under the Cuban Adjustment Act." *Alonso-Escobar v. USCIS Field Office Dir.*, 462 Fed. Appx. 933, 934-935 (11th Cir. 2012). It held the district court lacked subject matter jurisdiction under § 1252(a)(2)(B)(ii), because plaintiff effectively

"challenged Defendants' discretionary decision not to parole him into the United States." *Alonso-Escobar,* 462 Fed. Appx. at 935. Similarly, here, Plaintiff is effectively challenging Defendants' discretionary decision not to parole her in the United States and asking the Court to force Defendants to give her humanitarian parole. As in *Alonso-Escobar,* Plaintiff's claims should be dismissed for lack of subject matter jurisdiction. Thus, all the claims should be dismissed for lack of subject matter jurisdiction under § 1252(a)(2)(B)(ii).

**B. Even if the Court had subject matter jurisdiction, Plaintiff fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) because Plaintiff is not entitled to the discretionary grant of humanitarian parole as a matter of right.**

To survive amotion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. In the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com*., 658 F.3d 1282, 1296 (11th Cir. 2011). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 545.

**1. *Matter of Q. Li* does not support the position that Plaintiff is entitled to discretionary humanitarian parole as a matter of right.**

Plaintiff heavily relies on the decision of Board of Immigration Appeals ("BIA") in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025) for her claim that she may only be released from custody pursuant to humanitarian parole. *See* D.E. 1, Complaint, at ¶ 31, 50–55. However, there is no language within *Matter of Q Li* that supports this assertion. In *Matter of Q. Li*, relying on the Supreme Court's 2018 decision in *Jennings*, the BIA held, "the only exception permitting the

release of aliens detained under section 235(b) of the INA, 8 U.S.C. § 1225(b), is the parole authority provided by section 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A). *See Jennings*, 583 U.S. at 300." *Matter of Q. Li*, 29 I&N Dec. at 69 (citation in original).

With misplaced reliance on *Matter of Q Li*, Plaintiff goes on to infer that Defendants did not have the authority to release her from mandatory detention with a Release on Recognizance, not a humanitarian parole. *See* D.E. 1, Complaint, at ¶ 55–56. ("noncitizens detained under INA § 235, 8 U.S.C. § 1225 are only eligible for release under the humanitarian parole…Consequently, Plaintiffs should have been issued a humanitarian parole upon release from custody."). However, since issuing its decision in *Matter of Q Li,* the BIA issued its decision in *Matter of Roque- Izada,* in which the BIA upheld that release of a Cuban national under § 1226(a) rather than 8 U.S.C. § 1182(d)(5)(A). *Matter of Roque-Izada*, 29 I&N Dec. 106, 108-09 (BIA 2025). Defendants have similarly released certain applicants for admission pursuant to a Release on Recognizance under 8 U.S.C. § 1226(a)(2)(A) or with a bond under 8 U.S.C. § 1226(a)(2)(B). *See, e.g.*, *Castillo-Padilla v. United States AG*, 417 Fed. Appx. at 890. ("The Board stated that Castillo-Padilla had failed to adequately explain how his release from custody on a $12,000 bond constitutes conditional parole, but the Board found that, even if Castillo-Padilla had been afforded conditional parole under section 236(a)(2)(B) of the Act, 8 U.S.C. § 1226(a)(2)(B), that was not the same as parole into the United States that would make him eligible for adjustment of status under section 245(a), 8 U.S.C. § 1255(a)") (citations omitted); *Delgado-Sobalvarro v. Att'y Gen. of the United States*, 625 F.3d 782, 784 (3d Cir. 2010) ("petitioners were released on conditional parole on their own recognizance in accordance with INA § 236."). The Plaintiff's assertion that the sole means of release from custody to be a humanitarian release pursuant to 8 U.S.C. § 1182(d)(5)(A) is unfounded.

**2. Count I, Mandamus Action, should be dismissed under Fed. R. Civ. P. 12(b)(1), or Fed. R. Civ. P. 12(b)(6) in the alternative, because Plaintiff does not have a clear right to a humanitarian parole as a matter of right.**

The Mandamus Act provides jurisdiction to district courts to compel officers to perform duties owed to the plaintiff. *See* 28 U.S.C. § 1361. Mandamus jurisdiction may be exercised "only if (1) a clear right to the relief sought, (2) that the defendant has a nondiscretionary duty to act, and (3) there is no other adequate remedy available." *Serrano v. United States AG*, 655 F.3d 1260, 1263 (11th Cir. 2011) (citing *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003)). The plaintiff carries the burden of showing that her right to issuance of the writ is "clear and indisputable." *Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 309 (1989). Even if all three elements are satisfied, the decision is "granted only in the exercise of sound discretion." *Whitehouse v. Illinois Central R. Co.*, 349 U.S. 366, 373 (1955).

In this case, Plaintiff cannot principally prove the first factor, a clear right to the relief sought, or the second factor, a nondiscretionary duty to act. Plaintiff has not met her burden to prove that Defendants have a nondiscretionary duty to grant a discretionary humanitarian parole as a matter of right. "The language of the statute does not require the Attorney General to parole any alien, nor does it mandate parole on any particular finding or findings or place any substantive restriction on the authority to deny parole." *Gisbert v. U.S. Att'y Gen.*, 988 F.2d 1437, 1443 (5th Cir. 1993). To the extent the Court finds it has jurisdiction, Plaintiff failed to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6) for the reasons explained above.

Therefore, even if Plaintiff could establish subject matter jurisdiction under the Mandamus Act, she has failed to state a claim upon which relief may be granted. Thus, Count I should be dismissed.

**3. Count II should be dismissed under Fed. R. Civ. P. 12(b)(6) because Defendants did not act contrary to law by not issuing a humanitarian parole to Plaintiff as a matter of right.**

In Count II, Plaintiff claims that not issuing discretionary humanitarian parole to Plaintiff when she was released from custody with a Release on Recognizance was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," in violation of § 706(2)(A). *See* D.E. 1, Complaint, at ¶ 76.

For the abovementioned reasons, Defendants maintains that Plaintiff has failed to meet her burden that Defendants violated the APA because they did not grant Plaintiff discretionary humanitarian parole as a matter of right. Plaintiff fails to point to any authority to demonstrate that her improper release from detention with a Release on Recognizance evolves into a humanitarian parole as a matter of right. Thus, Count II should be dismissed.

**4. Count III should be dismissed under Fed. R. Civ. P. 12(b)(6) because Defendants did not unreasonably delay the issuance of a humanitarian parole as a matter of right.**

Section 706(1) of the APA requires cases to be adjudicated within a reasonable time. 5 U.S.C. § 706(1). If a matter has not been adjudicated within a reasonable time, then a plaintiff may "compel agency action unlawfully withheld or unreasonably delayed." *Id*. Only ministerial or non-discretionary acts may be compelled, and the district court is not permitted to direct how the agency shall act. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (stating "§ 706(1) empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act.").

Plaintiff has not met her burden to establish that Defendants have unreasonably delayed the issuance of humanitarian parole because, as explained, *supra*, she is not entitled to a grant of discretionary humanitarian parole as a matter of right. Further, only "non-discretionary acts may

be compelled" under § 706(1). Humanitarian parole is discretionary and can only granted by the Secretary of Homeland Security on a case-by-case basis for urgent humanitarian reasons or significant public benefit. *See* § 1182(d)(5)(A). Thus, Count III should be denied.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Complaint for Mandamus, APA Judicial Review, and Declaratory Relief [D.E. 1].

**Dated: November 3, 2025** **Respectfully submitted,**

**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

***/s/ David Werner***
DAVID WERNER
Assistant United States Attorney
Fla. Bar. No. 113436
99 N.E. 4th Street
Miami, Florida 33132
Telephone: (786) 439-3194
Facsimile: (305) 530-7139
Email: David.Werner@usdoj.gov
**Counsel for United States of America**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**By: *<u>/s/ David Werner</u>***
**David E. Werner**
Assistant United States Attorney

**Eduardo R. Soto**
grace@esotopa.com
**Roberto Valesquez**
robertovelasquezesq@gmail.com
**Eduardo Soto & Associates, P.A.**
999 Ponce de Leon Blvd., Suite 1040
Coral Gables, Florida 33134
Office: (305) 446-8686
Fax: (305) 529-0445
*Counsel for the Plaintiff*